IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOHN LARRY SANDERS and SPECIALTY FERTILIZER PRODUCTS, LLC, | Civil File No. 4:09-cv-00016-JTM |
| Plaintiffs/Counterclaim Defendants, | |
| v. | |
| THE MOSAIC COMPANY, CARGILL, INC., and CARGILL FERTILIZER, INC., | |
| Defendants/Counterclaim Plaintiffs. | |

# MOSAIC'S SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENT-IN-SUIT

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

    Delays Resulting From Reexamination Proceedings.......................................................2

    Prejudice To Mosaic Resulting From Reexamination Delays .........................................3

    The Advanced Stage of The Litigation and Mosaic's Investment
    in Document Production ..................................................................................................3

    Tactical Reasons for Plaintiffs' Proposal.........................................................................4

ARGUMENT ......................................................................................................................6

    I.    A STAY POTENTIALLY LASTING SIX YEARS OR MORE
        WOULD PREJUDICE AND TACTICALLY DISADVANTAGE
        MOSAIC .............................................................................................................7

        A.    Plaintiffs' Requested Stay Could Easily Last Over Six Years ................7

        B.    Plaintiffs' Proposed Stay Would Undo The Claims
            Construction Work Of This Court And The Federal Circuit ..................8

        C.    Plaintiffs' Proposed Stay Increases The Difficulty Of
            Discovering Additional Invalidating Evidence........................................8

        D.    Plaintiffs' Proposed Stay Likely Increases Mosaic's Risk of
            Damages and Mosaic's Investment In The Accused Products ................9

        E.    Plaintiffs Can Point To No Cognizable Harm From
            Continuing The Litigation They Commenced .......................................10

        F.    Plaintiffs' Motion Evidences Their Aim For Tactical
            Advantage ...............................................................................................10

    II.   A STAY WOULD NOT SIMPLIFY THE ISSUES AT TRIAL AS
        QUICKLY AND EFFICIENTLY AS A SUMMARY JUDGMENT
        DETERMINATION ON INVALIDITY IN 2011 ............................................12

    III.  TOO MUCH AS OCCURRED TO JUSTIFY A STAY .................................14

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affinity Labs of Texas v. Apple Inc.*,
  2010 WL 1753206 (N.D. Cal. Apr. 29, 2010) ...........................................................................7

*Anascape, Ltd. v. Microsoft Corp.*,
  475 F. Supp. 2d 612 (E.D. Tex. 2007) ................................................................................9, 10

*Biax Corp. v. Fujitsu Computer Sys. Corp.*,
  2007 U.S. Dist. LEXIS 12973 (E.D. Tex. Feb. 26, 2007) ..............................................7, 8, 9

*Castanho v. Jackson Marine, Inc.*,
  484 F. Supp. 201 (E.D. Tex 1980) .........................................................................................10

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
  711 F. Supp. 1205 (D. Del. 1989) ..........................................................................................12

*eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc.*,
  2011 WL 280942 (M.D. Fla. Jan. 26, 2011) ..............................................................7, 13, 14

*ePlus, Inc. v. Lawson Software*, *Inc.*
  2010 WL 1279092 (E.D. Va. Mar. 31, 2010) .......................................................................7, 8

*Esco Corp. v. Berkeley Forge & Tool, Inc.*,
  2009 WL 3078463 (N.D. Cal. Sept. 28, 2009) ......................................................................12

*Fusilamp, LLC v. Littlefuse, Inc.*,
  2010 WL 2277545 (S.D. Fla. June 7, 2010) ............................................................................7

*George Kessel Intern. Inc. v. Classic Wholesales, Inc.,*
  544 F. Supp. 2d 911 (D. Ariz. 2008) ..................................................................................... 15

*Gladish v. Tyco Toys Inc.*,
  29 U.S.P.Q.2d 1718 (E.D. Cal. 1993) .......................................................................9, 12, 13

*Imax Corp. v. In-Three, Inc.*,
  385 F. Supp. 2d 1030 (C.D. Cal. 2005) ...........................................................................10, 13

*Jain v. Trimas Corp.*,
  2005 WL 2397041 (E.D. Cal. Sept. 27, 2005) .......................................................................12

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ...............................................................................................................10

*Medicis Pharm. Corp. v. Acella Pharm. Inc.*,
    2011 WL 587094 (D. Ariz. Feb. 9, 2011) .................................................................. 7, 14

*NetJumper Software, LLC v. Google, Inc.*,
    2008 WL 2761022 (E.D. Mich. July 15, 2008) ............................................................ 10

*Oracle Corp. v. Parallel Networks, LLP*,
    2010 WL 3613851 (D. Del. Sept. 8, 2010) ......................................................... 8, 13, 14

*Robbins v. H.H. Brown Shoe Co.*,
    2009 WL 2170174 (S.D.N.Y. June 30, 2009) ................................................................ 13

*Sighting Sys. Inst., LLC v. Prestige Law Enforcement, Inc.*,
    2006 U.S. Dist. LEXIS 64698 (N.D. Tex. Sept. 11, 2006) ............................................ 14

*Ultra Products, Inc. v. Antec, Inc.*,
    2010 WL 1688538 (N.D. Cal. Apr. 26, 2010) ............................................................ 9, 12

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001) ........................................................................................ 6

*Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*,
    2006 WL 1892546 (E.D. Mo. July 10, 2006) .................................................................. 7

*Wayne Automation Corp. v. R.A. Pearson Co.*,
    782 F. Supp. 516 (E.D. Wash. 1991) ............................................................................ 12

**STATUTES**

35 U.S.C. § 303 .......................................................................................................................... 2

35 U.S.C. § 312 .......................................................................................................................... 2

35 U.S.C. § 134 .......................................................................................................................... 2

35 U.S.C. §§ 141, 145, 306 ..................................................................................................... 2, 3

35 U.S.C. §305 ........................................................................................................................... 7

35 U.S.C. §318 ........................................................................................................................... 6

**OTHER AUTHORITIES**

37 C.F.R. 1.989 .......................................................................................................................... 2

37 C.F.R. §§ 1.552, 1.501, and 1.902 ...................................................................................... 13

# INTRODUCTION

Defendants The Mosaic Company, Cargill, Inc., and Cargill Fertilizer, Inc. (together, "Mosaic") respectfully submit these suggestions in opposition to Plaintiffs' Motion to Stay the Litigation Pending Reexamination of the Patent-in-Suit.

Plaintiffs' request for a stay while "experts" at the Patent Office resolve invalidity issues has facial appeal. That is presumably the reason why Plaintiffs repeat their "expertise" argument a half-dozen times. But their request ignores the facts establishing why Plaintiffs cannot locate *any* authority in *any* jurisdiction granting a stay in any comparable case:

- *First*, the indefinite delay Plaintiffs seek could easily exceed six years. The average delay currently resulting from a single *inter partes* reexamination, along with available appeals, is *six-and-half years*. That delay is piled on top of the more than *seven years* Plaintiffs delayed before charging Mosaic with infringement for products introduced back in 2001.

- *Second*, Plaintiffs seek to undo the claim constructions they successfully sought from the Federal Circuit. Plaintiffs' sudden interest in pursuing their claims outside this Court has nothing to do with "expertise" and everything to do with tactics. *Ex parte* reexaminations like the request filed by Plaintiffs result in changed claim language 70% of the time, while they result in wholly invalidated claims less than 10% of the time. Recognizing that the claim construction they persuaded the Federal Circuit to grant them produced facially invalid claims, Plaintiffs now seek to deprive Mosaic of an opportunity to establish that fact. Instead they want to obtain new claims that will likely require this Court to undertake an entire second round of claim construction.

- *Third*, the potential accrual of damages and interference with business that Plaintiffs' tactic would inflict upon Mosaic is immense. No licensing terms that Plaintiffs have demanded would cost less than hundreds of millions of dollars, damages that Plaintiffs will presumably argue must continue to accrue during the years they debate the claims and construction of their patent in the Patent Office. Meanwhile, as the huge investment Mosaic has made in the accused products remains in limbo, key evidence helping establish the invalidity of the patent, evidence that must date from no later than *1997*, steadily disappears.

There is an efficient alternative to Plaintiffs' proposed indefinite, tactical delay. Mosaic believes that, under the claim construction Plaintiffs persuaded the Federal Circuit to adopt, a handful of depositions coupled with prior art Plaintiffs previously withheld from the Patent

1

Office will establish sufficient grounds to establish invalidity through summary judgment. With that result, this Court will be done with this case. No other motions, or discovery of infringement, inequitable conduct, damages, laches, or other issues now in the case are necessary. If the Court disagrees with Mosaic's view of invalidity, then the Court could then grant Plaintiffs' motion for a stay.[1]

This response to Plaintiffs' motion relies on the August 5, 2011, Declaration of Heather Redmond ("Redmond Decl.") with attached exhibits ("Redmond Ex."), the August 2, 2011, Declaration of Stewart Bexton ("Bexton Decl."), the July 22, 2011, Declaration of Scott Brown ("Brown Decl.") with attached exhibits, and the other files and records in the case.

## BACKGROUND

**Delays Resulting From Reexamination Proceedings**

Patent Office statistics and other courts' analyses establish why the indefinite delay Plaintiffs seek will likely last at least three years before administrative appeals commence and six years after appeals are completed. *See* Brown Decl. Ex. D and Redmond Ex. F. The reexamination process includes many steps, including (1) the Patent Office's decision as to whether to grant the requests, 35 U.S.C. § 303; 35 U.S.C. § 312; (2) its decision as to whether to consolidate the two pending requests, 37 C.F.R. § 1.989; (3) multiple rounds of exchanges with the Patent Office; (4) appeals by any dissatisfied party to the Patent Office Board of Patent Appeals, 35 U.S.C. § 134; and (5) appeals by any party dissatisfied with *that* decision to the Federal Circuit, 35 U.S.C. §§ 141, 145, 306. All those events add up to delays totaling "AT LEAST 60 to 97 months." Redmond Ex. F (capitalization in original; exclamation point excluded).

---

[1] Plaintiffs have already rejected Mosaic's compromise proposal. Redmond Ex. D at 6-7.

2

**Prejudice To Mosaic Resulting From Reexamination Delays**

During the years of delay Plaintiffs seek, Mosaic must stop selling the accused products, maintain its investment in them, or pay the licensing rates Plaintiffs have demanded, sums reaching into the hundreds of millions of dollars. Mosaic's already-huge investment in the accused products, introduced back in 2001, is steadily increasing, with sales nearly tripling in the past three years.[2]

The delays Plaintiffs seek now compound the delays they have already imposed upon Mosaic. Plaintiffs had to have been aware of the first of the accused products upon its well-publicized introduction in November 2001, because Plaintiffs were conducting negotiations with Mosaic about other issues at the time. Plaintiffs consulted their current counsel about possible litigation by June 21, 2005. Redmond Ex. A. By October 13, 2005, Plaintiffs had conducted chemical analyses of the accused products. *Id.* Plaintiffs lay in the weeds for years before filing suit in January 2009. They are now proposing that the litigation process be stalled until as long as *sixteen years* pass after Mosaic first put the accused products on the market.

**The Advanced Stage of The Litigation and Mosaic's Investment in Document Production**

The Court is aware of the claim construction work, including discovery, that has previously occurred, including the appeal to the Federal Circuit. The Court is likely less aware of Mosaic's massive discovery efforts relating to other issues. Together, the parties have responded to 118 written document requests, 22 interrogatories, and 107 requests for admission. Both sides have conducted detailed contention discovery and some motion practice as to infringement, invalidity, and inequitable conduct contentions. Redmond Decl. ¶ 5.

---

[2] So that the Court can appreciate the massive size of Mosaic's MicroEssentials business and the potential damages that will continue to accrue during the period of delay, Mosaic has included confidential sales figures as Redmond Ex. H, filed under seal.

While Plaintiffs have produced only 4,357 documents comprising fewer than 10,000 pages, *see* Redmond Decl. ¶ 7, the burden of collecting, reviewing, and producing documents on Mosaic's side has been immense. Plaintiffs' requests covered more than ten years of research, development, marketing, sales, budgets, forecasts, patent prosecution, and internal communications by three different corporate entities on a major product line. Millions of documents were collected from forty-four Mosaic custodians in eleven different cities in four different countries; indeed, just one of three rounds of document collection alone encompassed over 4,000,000 Mosaic documents. Additional documents were collected from the Cargill entities. Redmond Decl. ¶ 8. Between July 2009 and March 2010, Mosaic's attorneys reviewed over 99,000 hard copy and electronic documents and e-mails (approximately 1.4 million pages[3]) for responsiveness, confidentiality, and privilege. Before Plaintiffs filed their reexamination petition, Mosaic had produced more than 180,000 pages of responsive documents. Redmond Decl. ¶¶ 9, 13. In connection with document collection, review, and production, Mosaic has incurred over $300,000 in fixed expenses for outside vendors, contract attorneys, and technical support personnel, in addition to paying for hundreds of hours devoted by lawyers at Mosaic's outside law firms. Redmond Decl. ¶ 10. If those efforts must be repeated for the years of delay Plaintiffs seek, still greater costs will be imposed on Mosaic.

**Tactical Reasons for Plaintiffs' Proposal**

In the Patent Office and in Court, Plaintiffs have been forced to focus on the potentially invalidating prior art of U.S. Patent No. 5,571,303 to Stewart Bexton. Plaintiffs did not cite to the Patent Office the International version of the Bexton patent application, a version containing additional disclosures that rebut virtually all the arguments Plaintiffs used to persuade the Patent

---

[3] Because many documents were reviewed electronically in native format, a precise page count is not available.

Office to issue their patent over the Bexton U.S. patent. In this Court, Plaintiffs advocated a claim construction designed to protect the validity of their patent from invalidation by the Bexton patent while still encompassing infringement by Mosaic's products.[4] Their proposed claim construction to this Court was that the patented fertilizer must contain a "*useful* amount of micronutrient," a construction designed to distinguish the small micronutrient levels in the Bexton patent. *See* Doc. No. 69 at 26 (emphasis added). This Court properly rejected that vague claim construction. Before the Federal Circuit, Plaintiffs suddenly advocated an entirely different construction, one that re-captured the infringement position they lost through this Court's claim construction, but at the price of persuading the Federal Circuit to issue a claim construction leading to a facially invalid patent. Before the Federal Circuit, Plaintiffs suddenly argued that their claimed invention encompassed *any* amount of micronutrient. Redmond Ex. G.

The Federal Circuit, which did not consider invalidity issues, permitted Plaintiffs to prevail on the broadened construction not presented to this Court. Now, having obtained the broad construction necessary to salvage infringement claims, Plaintiffs' reexamination petition acknowledges that the claim construction they obtained cannot stand. Their submission to the Patent Office admits that there may be "a substantial new question of patentability." Brown Ex. A at 30. Having created that substantial new question of patentability by persuading the Federal Circuit to overturn this Court's claim construction, Plaintiffs sought *ex parte* reexamination because the Patent Office permits re-writing of patent claims in 70% of *ex parte* reexaminations, while wholly invalidating claims in fewer than 10% of such reexaminations. *See* Brown Decl. Ex. C. The consequence of Plaintiffs' tactic would be to undo the claim construction work

---

[4] The narrower a patent's claim construction, the safer a patent is from invalidation; the broader it is, the more powerful it is for infringement arguments.

5

already performed by this Court and the Federal Circuit, and to force this Court to construe different patent claims in the same patent for a second time.

In devising new patent claims in the Patent Office, intimate knowledge of Mosaic's product formulations, new product plans, and production processes is extremely valuable to Plaintiffs. Presumably for that reason, Plaintiffs exerted substantial pressure on Mosaic to complete its document production before they filed their request for reexamination. *See, e.g.*, Redmond Decl. ¶ 9; Exs. C at 1, 6-7, 9, 11-12, 14, 16, 19-20, 22; Ex. D. As recently as mid-June this year, Plaintiffs demanded that Mosaic update and complete its production of documents. Redmond Ex. D at 5. Mosaic undertook further significant efforts, at significant cost, to comply with Plaintiffs' requests, including the production of an additional 104,388 pages of responsive documents. Redmond Decl. ¶ 13. Shortly after telling Mosaic that they were eager to recommence litigation and would propose a litigation schedule to Mosaic, Redmond Ex. D, less than two weeks after requesting that Mosaic produce massive quantities of additional documents, and just six days after Mosaic re-commenced its own discovery efforts by serving a notice to depose inventor Larry Sanders, Plaintiffs filed their thirty-page reexamination petition, without any notice to Mosaic. Redmond Decl. ¶ 14.

## ARGUMENT

There is no obligation "to stay judicial resolution in view of [Patent Office] reexaminations." *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). In the rare cases in which such requests are made by plaintiffs rather than defendants, they have never, or virtually never, been granted. The Court has ample discretion in determining whether a stay "would not serve the interests of justice." 35 U.S.C. §318. Three primary factors determine whether a stay should be granted pending reexamination: (1) whether a stay will unduly

prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *E.g.*, *Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*, 2006 WL 1892546, at *1 (E.D. Mo. July 10, 2006).

I. **A STAY POTENTIALLY LASTING SIX YEARS OR MORE WOULD PREJUDICE AND TACTICALLY DISADVANTAGE MOSAIC**

    A. **Plaintiffs' Requested Stay Could Easily Last Over Six Years**

Courts acknowledge that indefinite delay like that sought by Plaintiffs causes prejudice. *See, e.g.*, *Medicis Pharm. Corp. v. Acella Pharm. Inc.*, 2011 WL 587094, *1 (D. Ariz. Feb. 9, 2011) (denying stay because court "disfavors indefinite and potentially lengthy stays pending the outcome of external proceedings"); *Biax Corp. v. Fujitsu Computer Sys. Corp.*, 2007 U.S. Dist. LEXIS 12973, at *4 (E.D. Tex. Feb. 26, 2007) (denying stay because indefinite delay "would likely prejudice" the nonmoving party).

Despite a statutory mandate that reexamination proceedings be conducted "with special dispatch," 35 U.S.C. §305, the statistics Plaintiffs supply the Court themselves indicate that, even before appeals, *inter partes* reexaminations typically last over 36 months. Brown Ex. D. "[I]f either party appeals the determination from the reexamination, the delay will likely extend *another three years*." *Affinity Labs of Texas v. Apple Inc.*, 2010 WL 1753206, *2 (N.D. Cal. Apr. 29, 2010) (denying stay) (emphasis added). The total delay resulting from *inter partes* reexaminations including appeals is accordingly six years or more. *ePlus, Inc. v. Lawson Software, Inc.*, 2010 WL 1279092, at *3 (E.D. Va. Mar. 31, 2010); Redmond Ex. F. Those figures alone provide many courts sufficient reason to deny a stay. *See, e.g.*, *eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc.*, 2011 WL 280942, at *4 (M.D. Fla. Jan. 26, 2011) (even four years would be an excessively "lengthy and indefinite amount of time"); *Fusilamp, LLC v.*

*Littlefuse, Inc.*, 2010 WL 2277545, at *4 (S.D. Fla. June 7, 2010) (average length of reexamination is "immoderate and unlawful"); *Biax*, 2007 U.S. Dist. LEXIS 12973, at *4 (stay for reexamination could create undue prejudice). Such a lengthy delay "does not serve the efficient administration of justice or the public interest." *ePlus, Inc.,* 2010 WL 1279092, at *3.

**B.    Plaintiffs' Proposed Stay Would Undo The Claims Construction Work Of This Court and the Federal Circuit**

Plaintiffs do not cite a single case involving a request for a stay from a *plaintiff* who has already sought a claim construction from the Federal Circuit (in addition to having chosen the court forum in the first instance), and Mosaic cannot locate any, either. As the court found in *Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 3613851 (D. Del. Sept. 8, 2010), where claim construction has already occurred and the "court's opinion has been vetted through the Federal Circuit," a stay is disfavored. *Id*. at *2. When plaintiffs request reexamination and seek a stay, even when no appeals have occurred, courts consistently recognize such motions as unfair tactical efforts.

**C.    Plaintiffs' Proposed Stay Increases the Difficulty of Discovering Additional Invalidating Evidence**

Staying this case for six years or more would prejudice Mosaic's ability to preserve some of the evidence that invalidates Plaintiffs' patent claims. That it is the alleged infringer who bears the burden of locating and producing such historical evidence is one reason why a request for a stay from a patentee *plaintiff* is very different from a request from a *defendant*. In this case, patent invalidity depends upon events before September 27, 1997, one year before the patent filing date. Plaintiffs seek to prevent discovery on such events until as long as *twenty years* after they occurred. One important witness, the inventor of the Bexton patent, is over 70 years old now and already lacks records to which he once had access. Bexton Decl. ¶ 7. He is aware of events and documents, nonetheless, that cause him to conclude that he does "not believe that Dr.

8

Sanders' patent discloses any invention not already disclosed in my work." *Id*. ¶ 4. The company that distributed his invalidating fertilizer, Agrium Inc., needs to be subpoenaed promptly, and Mosaic needs to subpoena records from at least one other source that may possess relevant invalidating records. Accepting Plaintiffs' effort to prevent such discovery indefinitely obviously decreases the likelihood that such evidence will remain available.

Courts acknowledge potential losses of evidence as sufficient prejudice to deny stays. *Ultra Products, Inc. v. Antec, Inc.*, 2010 WL 1688538, *3 (N.D. Cal. Apr. 26, 2010); *Biax*, 2007 U. S. Dist. LEXIS 12973, at *4. Courts recognize that "crucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later." *Anascape*, 475 F. Supp.2d at 617. Given the very real possibility that "witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceedings take place," *Gladish v. Tyco Toys Inc.*, 29 U.S.P.Q.2d 1718, 1720 (E.D. Cal. 1993), Mosaic could lose case-dispositive evidence if Plaintiffs' requested delay were permitted.

### D. Plaintiffs' Proposed Stay Likely Increases Mosaic's Risk of Damages and Mosaic's Investment in the Accused Products

The delay Plaintiffs seek will cause significant damage to Mosaic apart from the potential loss of evidence. Mosaic's sales and production capacity are growing steadily. *See* Redmond Ex. H. During Plaintiffs' requested period of delay, Mosaic will likely sell *billions* of dollars of accused product. A decision to stop selling because of the threat of an invalid patent means substantial lost revenue, while a decision to continue selling risks accumulating, by Plaintiffs' proposed calculations, hundreds of millions of dollars in potential damages. Mosaic should not be forced to remain in limbo until 2017 and to make decisions regarding a successful product line based on guesses about how Plaintiffs might change their patent claims over the next six
9
Case 4:09-cv-00016-JTM   Document 106   Filed 08/08/11   Page 13 of 20

years. While altered claims during reexamination proceedings sometimes eliminate prior damage claims, Mosaic has no guarantee that that will occur.

### E. Plaintiffs Can Point To No Cognizable Harm From Continuing The Litigation They Commenced

Plaintiffs bear the burden to "show that there is a pressing need for delay." *NetJumper Software, LLC v. Google, Inc.*, 2008 WL 2761022, at *1 (E.D. Mich. July 15, 2008). Plaintiffs must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936); *Imax Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005) (denying stay). Here, harm to Mosaic is not just "a fair possibility"; it is certain. In such cases, the "burden is squarely on the party seeking the stay to show that there is a pressing need for a delay." *Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex 1980).

Plaintiffs make no effort to demonstrate that they will suffer any "hardship or inequity in being required to go forward," apart from the cost of the litigation they commenced themselves. With Mosaic's compromise, invalidity-focused proposal for conducting limited litigation proceedings, Plaintiffs would incur no meaningful prejudice at all, apart from the loss of the ability to leave dangling over Mosaic the threat of an invalid patent. The imbalance of harm alone establishes sufficient basis for denying Plaintiffs' motion.

### F. Plaintiffs' Motion Evidences Their Aim for Tactical Advantage

There is ample reason to conclude that Plaintiffs' forum shopping is designed to serve their tactical interests. Plaintiffs' tactical motivations are relevant because a "Court must be aware that a request for [re]examination can be used as a tactical tool to delay a case and impose costs, with no real expectation that any controversy will be resolved." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007). These are among the actions taken

by Plaintiffs that are difficult to square with any purpose other than an effort to gain tactical

advantage:

- Back in May 2009, shortly after this case was filed, Mosaic provided Plaintiffs the lead prior art supporting reexamination, stating then that Defendants "do not see any plausible argument that the Bexton [International patent material], standing alone, does not anticipate every asserted claim of the '459 patent." Redmond ¶ 6 and Ex. B. Rather than respond, Plaintiffs made the tactical decision to proceed in court for two years before deciding that they would rather try a new forum. They then provided the Patent Office the same prior art Mosaic had provided them two years earlier.

- Plaintiffs created the problem leading to their reexamination request through the claim construction they persuaded the Federal Circuit to accept, despite never presenting it to this Court. Having salvaged a plausible infringement case on appeal at the price of an invalidating claim construction, Plaintiffs now want to start over.

- Plaintiffs have consistently prevented Mosaic from learning whether inventor Sanders can defend the validity of his patent. Back in 2009, Plaintiffs cancelled the long-scheduled deposition of Dr. Sanders in Kansas City just *an hour-and-a-half* before it was to begin, even though Mosaic's counsel had traveled to Kansas City. Redmond Ex. E at 10. They resisted Mosaic's subsequent efforts to reschedule the deposition. They submitted their request for reexamination just six days after receiving a notice for a rescheduled deposition. Redmond Decl. ¶¶ 11, 14; Ex. C at 16-17; Ex. E at 11-12, 15. Plaintiffs have thus prevented examination of the central witness in the case, evidence that could be submitted to the Patent Office in reexamination proceedings.

- As recently as June this year, Plaintiffs pressed Mosaic to produce massive quantities of documents, promising Mosaic that they would soon present a case management plan and would produce their own remaining documents. Redmond Ex. D at 5. Less than two weeks after their last request, and after receiving more than 100,000 pages of additional responsive documents, they filed their request for reexamination without notifying Mosaic or producing any discovery themselves. Redmond Decl. ¶¶ 13-14.

- Having obtained thousands of product-related documents from Mosaic, including documents relating to product formulations, production processes, and plans for additional products, Plaintiffs have armed their patent prosecution team with confidential information that will allow them to tailor their claim constructions to the confidential Mosaic information they acquired.[5]

- Because Plaintiffs have produced so few documents – they assert that their production is almost complete after producing only 9,939 pages of documents – the litigation has been relatively inexpensive for them. For Mosaic, on the other hand, it has been hugely expensive, time-consuming, and burdensome. Now, when the relatively equal expense of

---

[5] Mosaic requested protection from such use of Mosaic's information, but Plaintiffs rejected it. The parties will soon be engaged in motion practice over the issue.

depositions threatens to begin, Plaintiffs have changed their minds about litigating.

When tactics like Plaintiffs' are visible, courts *always* deny stay requests. *Ultra Products, Inc. v. Antec, Inc.*, 2010 WL 1688538, at *3 (stay denied because an "election not to seek reexamination [for several years] raises the inference that the timing of the current request is tactically driven"); *Jain v. Trimas Corp.*, 2005 WL 2397041 (E.D. Cal. Sept. 27, 2005) (stay denied because "plaintiff chose the forum, forced defendant to expend time and money, and now, after the litigation has progressed for over a year, seeks reexamination of his patent based on prior references known since [the prior year]"); *Gladish v. Tyco Toys Inc.*, 29 U.S.P.Q.2d 1718, 1720 (E.D. Cal. 1993) (stay denied because "Plaintiff chose this forum, forced [the defendant] to expend time and money in responding to [motions], and now, after the litigation has progressed almost a year and [the defendant's] discovery efforts are bearing fruit, seeks reexamination of his patent based on prior references known to plaintiff since [the prior year]"); *Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516, 519 (E.D. Wash. 1991) (stay denied because "it would not be fair to allow plaintiff to institute this action, agree to cutoff dates, have defendant conduct extensive discovery and then allow plaintiff to file for reexamination of the patent and stay this action"); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1208 n. 9 (D. Del. 1989) (stay should be denied when it "could result in a tactical advantage to one party or the other");

In sum, the odor of tactical advantage rather than genuine interest in the views of the "experts" at the Patent Office permeates the actions leading to Plaintiffs' motion.

## II. A STAY WOULD NOT SIMPLIFY THE ISSUES AT TRIAL AS QUICKLY AND EFFICIENTLY AS A SUMMARY JUDGMENT DETERMINATION ON INVALIDITY IN 2011

"[T]o truly simplify the issues . . . the outcome of the reexamination must finally resolve all the issues in the litigation." *Esco Corp. v. Berkeley Forge & Tool, Inc.*, 2009 WL 3078463

*3 (N.D. Cal. Sept. 28, 2009) (denying stay) (emphasis in original; citation omitted). "[W]hen reexamination potentially will eliminate only one issue out of many, a stay is not warranted." *Imax Corp.,* 385 F. Supp.2d at 1032; *accord Ariba, Inc.*, 2007 WL 3132606, at *2; *Oracle Corp.*, 2010 WL 3613851, at *2. When a court is the "only forum for a complete consideration of . . . evidence of invalidity" and the "Plaintiff chose this forum," "the issuance of a stay would be unfair to defendants." *Gladish v. Tyco Toys,* 29 U.S.P.Q.2d at 1720.

Plaintiffs' stay request is highly unlikely to remove the burden of this case from the Court. As already noted, over 90% of *ex parte* reexamined patents emerge from the process with some claims intact and over half of *inter partes* reexamined patents do so. In the likely event that *some* claims can be redrafted to survive reexamination, claim construction arguments and invalidity debates will still have to be repeated in this Court.

Only limited categories of prior art can be considered in reexamination proceedings, and among the categories that can *not* be considered are evidence of prior sales, offers to sell, or public disclosures of invalidating products. 37 C.F.R. §§ 1.552, 1.501, and 1.902. Mosaic believes that such evidence exists in this case, though not all of it has yet been gathered. The invalidating effect of such evidence can *only* be considered by this Court. *eComsystems, Inc. v. Shared Mktg. Srvs., Inc.*, 2011 WL 280942, at *3 (M.D. Fla Jan. 26, 2011) (because the Patent Office will not analyze all grounds for invalidity, issues remain and could require attention from the court). Similarly, inequitable conduct arguments cannot be considered during reexamination. Under such circumstances, courts recognize that the apparent efficiencies offered by a stay pending reexamination are wholly illusory. *Robbins v. H.H. Brown Shoe Co*., 2009 WL 2170174, at *2 (S.D.N.Y. June 30, 2009) ("there are significant, complex issues, such as

infringement, inequitable conduct, and anticipation and obviousness based on prior uses, that will remain after the reexamination").

Since Mosaic is not a party to the reexamination proceedings, *nothing* that occurs in the proceedings can preclude its arguments against any surviving claims, so that even issues apparently resolved during reexamination can be relitigated. That distinguishes this case from in which the party opposing a stay is involved in a reexamination, and thus cannot relitigate administratively-resolved issues. *Medicis Pharm. Corp.,* 2011 WL 587094, at *2 (denying stay in part because relevant party "will not be bound by the findings of the PTO").

Granting Plaintiffs' motion would not result in simplifying issues nearly as effectively as would a summary judgment decision on invalidity within a few months, following limited discovery. Even an appeal of an invalidity decision would likely be finalized well before reexamination is completed. Surely it is only fair to test the validity of the claim construction with which Plaintiffs persuaded the Federal Circuit to reverse this Court's decision.

### III. TOO MUCH HAS OCCURRED TO JUSTIFY A STAY

Discovery is not complete, and a trial date is not set. But already, through large document productions, claim construction proceedings, and an appeal, Plaintiffs have forced Mosaic to invest hundreds of thousands of dollars in defending this litigation. Nearly thirty months have passed since the case began. When litigation is advanced sufficiently that a district court's claim construction has been reviewed by the Federal Circuit, a plaintiff's request for a stay should be denied. *Oracle Corp.*, 2010 WL 3613851, at *2.

While limited discovery is necessary for Mosaic to present fully its motion for summary judgment on invalidity, most work necessary to complete the record on that issue has already occurred. The mere fact that some discovery remains does not mean that a stay is appropriate. *eCOMSYSTEMS*, 2011 WL 280942, at *2; *Sighting Sys. Inst., LLC v. Prestige Law Enforcement,*

*Inc.*, 2006 U.S. Dist. LEXIS 64698, at *11 (N.D. Tex. Sept. 11, 2006); *George Kessel Intern. Inc. v. Classic Wholesales, Inc.,* 544 F. Supp. 2d 911, 914 (D. Ariz. 2008). This case has advanced far beyond the initial stages of litigation, and Plaintiffs' motion seeks to undo most of the work, including the appeal, that has been accomplished. That should not be permitted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion to stay the litigation be denied, and instead that Mosaic be permitted to undertake limited discovery sufficient to present its invalidity defense to the Court for summary determination.

Dated: August 8, 2011

By *s/ Victoria L. Smith*
DORSEY & WHITNEY LLP
Peter M. Lancaster, MN Bar #0159840
lancaster.peter@dorsey.com
Heather D. Redmond, MN Bar #0313233
redmond.heather@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

STINSON MORRISON HECKER LLP
J. David Wharton, MO Bar 20347
dwharton@stinson.com
Victoria L. Smith, MO Bar 41915
vsmith@stinson.com
1201 Walnut, Suite 2500
Kansas City, MO 64106
Telephone: 816.842.2600

*Attorneys for Defendants The Mosaic Company, Cargill, Inc., and Cargill Fertilizer, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Jennifer Christine Bailey:  jcb@hoveywilliams.com, ecf@hoveywilliams.com

John M. Collins:  jmc@hoveywilliams.com, ecf@hoveywilliams.com

Matthew B. Walters:  mwalters@hoveywilliams.com

Scott R. Brown:  srb@hoveywilliams.com, ecf@hoveywilliams.com

*s/ Victoria L. Smith*
Victoria L. Smith